UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SONYA LEANNE MAPLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-157-PPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## **OPINION AND ORDER**

Sonya Leanne Maples has appealed from an administrative law judge's denial of her applications for Social Security supplemental security income. In doing so, she claims that the ALJ committed three errors which require a reversal of his decision, but I will limit my discussion to two: whether the ALJ erred in assessing Maples' psychogenic seizures, and whether the VE's testimony regarding job numbers was supported by substantial evidence. Because I find that the ALJ erred in both regards, I will REVERSE the ALJ's decision and REMAND on these issues.

### **Background**

Sonya Leanne Maples applied for supplemental security income benefits on June 19, 2014, claiming that she was disabled as of November 26, 2007. [A.R.[1]  16.] Her claim was denied initially and denied again upon reconsideration. After that, she requested

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 14. Citations are to the page number in the lower right-hand corner of the A.R.

and had a hearing before an Administrative Law Judge on August 19, 2016. The ALJ denied Maples benefits, and the Appeals Council agreed. [A.R. 1.] Maples then sought review of the ALJ's decision in this court.

My colleague, Magistrate Judge Cherry, presided over the initial appeal of the case by consent of the parties. After consideration of the issues presented, he remanded the ALJ's decision. [A.R. 1626]. Pursuant to Judge Cherry's remand order, the Appeals Council directed the ALJ to conduct further proceedings consistent with his Order. The Appeals Council directed the ALJ to consider treatment records from Northeastern Center, to consider functional limits due to psychogenic nonepileptic seizures, to re-analyze fibromyalgia, to reconsider the opinion of chiropractor N. Gasdorf, to consider whether noncompliance was influenced by a psychological component, and to provide an explanation as to how moderate limits in concentrating, persisting, and maintaining pace is addressed in the residual functional capacity. [A.R. 1475]. During the Appeals process, Maples filed a subsequent claim for supplemental security income on October 17, 2017. The Appeals Council ordered that all claims be consolidated. [A.R. 1475].

A second hearing was held on July 10, 2019. On December 18, 2019, the ALJ issued his written decision which once again denied Maples benefits. She then took her case to the Social Security Appeals Council. On January 30, 2019, the Appeals Council denied Jones' request for review. [A.R. 1650.] Maples now seeks review of that decision.

In the written decision, the ALJ determined that Maples had the severe impairments of cervical degenerative disc disease, status post fusion in 2018; positive

ANA; myofascial pain syndrome/fibromyalgia; psychogenic nonepileptic seizures; vertigo; chronic obstructive pulmonary disease ("COPD"); thyroiditis; lupus; bilateral hip bursitis; right ulnar nerve neuropathy, status post release in 2018; bipolar disorder/major depressive disorder/schizoaffective disorder; posttraumatic stress disorder ("PTSD"); and, cannabis use disorder. [A.R. 1478.] The ALJ also found that Maples had the non-severe impairments of pruritus, hyperlipidemia, hypotension, GERD/reflux, irritable bowel syndrome, mild carpal tunnel syndrome bilaterally, restless leg syndrome, and mild degenerative changes of the left hip. *Id.* The ALJ also found that Maples' rheumatoid arthritis, ankylosing spondylitis, and chronic kidney disease were not medically determinable impairments. [A.R. 1479.]

The ALJ then determined that Maples did not meet any of the applicable social security listings for disability. Specifically, the ALJ examined listings 3.02 (chronic respiratory disorders), 11.02 (epilepsy), 14.02 (systemic lupus erythematosus), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders); 12.08 (personality and impulse-control disorders); and 12.15 (trauma- and stressor-related disorders). [A.R. 1479-80.]

At the next step, the ALJ determined Maples' residual functional capacity (RFC). [A.R. 1482.] She determined that Maples was capable of performing light work as defined in 20 CFR 416.967(b), except that Maples can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. Maples can occasionally balance, stoop, kneel, crouch, and crawl. *Id.* She should avoid concentrated exposure to hazards

-3-

such as dangerous moving machinery, unprotected heights, and uneven terrain. *Id.* She should avoid concentrated exposure to fumes, odors, dusts, gases, and other similar respiratory irritants. *Id.* She can frequently handle, fingers, and feel with the right upper extremity. *Id.* Maples can understand, remember, and carry out simple instructions. *Id.* She can make judgments on simple work-related decisions. *Id.* She can respond appropriately to occasional interactions with coworkers, supervisors, and the general public. *Id.* She can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting. *Id.* I won't repeat the ALJ's description of the medical evidence included in the written decision. [*See* A.R. 1482-91.]

The ALJ then posed the RFC and some additional hypothetical questions to a vocational expert (VE) who testified whether such a hypothetical person with Maples' RFC could likely find gainful employment. [A.R. 1491-92, 1540-42.] The ALJ determined that Maples was unable to perform her past relevant work as a customer service representative, either as performed or as generally performed. [A.R. 1491.] However, she found that Maples could perform the jobs of routing clerk, housekeeper/cleaner, and retail marker, all of which exist in sufficient numbers in the national economy. As a result, the ALJ found that Maples was not disabled within the meaning of the Social Security Act and its regulations.

## Discussion

In a Social Security disability appeal, my role as district court judge is limited. I do not review evidence and determine whether a claimant is disabled and entitled to

benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. § 405(g). The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Given this modest standard, the review is a light one, but of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

Maples asserts that the ALJ failed to properly account for her psychogenic seizures in the RFC, and that the ALJ improperly dismissed evidence of her

-5-

psychogenic seizures. [DE 20 at 13]. Generally speaking, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all the claimant's limitations supported by the medical record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

While the ALJ found that Maples' psychogenic nonepileptic seizures were a severe impairment, she seems to dismiss them throughout the decision, noting that they "have not been witnessed during the course of treatment." [A.R. 1485]. A psychogenic seizure is an event which resembles a seizure but does not have the physical characteristics such as electrical discharges in the brain that are associated with epilepsy.[2] It is unknown what causes psychogenic seizures but it is thought that they are psychiatric illness and are triggered by post-traumatic stress disorder or other high levels of stress. *Id.*

Although the ALJ states that the RFC provides limitations to "accommodate any seizure activity that may occur," he relies on the fact that objective evidence does not show seizure activity. Maples testified that she had frequent seizures, and that she takes Lamictal and Topamax as anti-seizure medication. [A.R. 49]. She testified that the medication does not help much with her "absent seizures." *Id*. Maples also testified that sometimes during seizures she loses control of her bladder or bowels. [A.R. 52]. While in the ER for a seizure, the emergency department noted tremors in her lower

---

[2] Chen, Jennifer, *Epilepsy or Not? PNES Mistaken for More Common Seizure Disorder*, YALEMEDICINE (Apr. 3, 2019), www.yalemedicine.org/news/seizure-epilepsy.

extremities and that she was unsteady on her feet. [A.R. 573]. The same medical note showed tremors during a video EEG. *Id.* While in the hospital, her tremors grew worse during intentional muscle activity. [A.R. 574]. The physician told her that he believes her seizures to be non-epileptic and caused by stress. [A.R. 575].

The ALJ takes special note that in 2016, Maples' neurologist stated that she was being followed for "alleged" seizures. [A.R. 1484]. However, this is a mischaracterization of Dr. Hamdi's findings. While there is one note that uses the word "alleged", the note itself does not discount the fact that she has seizures. On the contrary, it discusses her seizures as fact. Instead, the word "alleged" seems to coincide with the fact that Dr. Hamdi had recently determined that her seizures were nonepileptic seizures; in other words, they were psychogenic seizures. [A.R. 2494]. At no point does Dr. Hamdi seem to believe that Maples is lying or exaggerating the existence of her seizures. Dr. Hamdi repeatedly states that her psychogenic nonepileptic seizures remain her "main problem." [A.R. 2497].

The ALJ further relies on the fact that the "evidence fails to reflect any observations of seizures by a treating source." [A.R. 1484]. It is unclear what the ALJ is attempting to get at with this statement. The record repeatedly corroborates Maples' seizure disorder, including mentions of the neurologist and hospital observing tremors. [A.R. 574, 833, 840, 844, 855, 859, 875, 2487, 2494, 2497]. Psychogenic seizures do not show up on objective testing, such as an EEG, CT, or MRI. *See Boiles v. Barnhart*, 395 F.3d 421, 424 (7th Cir. 2005) (stating that psychogenic seizures do not show up on EEGs and

they "cannot be treated by anti-seizure medication." They do not benefit from repeated hospital visits for seizure treatment.).

Since Maples' seizures are psychogenic in nature, they are less likely to be observed by treating physicians, as they will not show up on EEGs or other objective testing. Maples' treating neurologist does not question her seizure disorder. Rather, he continues to discuss the psychogenic nature of her seizures and recommending psychiatric treatment. [A.R. 833, 840, 844, 855, 859, 875, 2487, 2494, 2497]. The ALJ seems to imply that Maples' seizures either do not exist or are less disabling than she asserts simply because the objective evidence doesn't support epileptic seizures. This is in error. Because psychogenic seizures do not respond to anti-seizure medication, people suffering from psychogenic seizures may "exhibit more frequent, severe, and disabling seizures as well as a poorer quality of life."[3]

Similarly, the ALJ relies on benign examinations with intact coordination and balance, as well as normal gait and normal EEGs. [A.R. 1484]. However, as stated above, psychogenic seizures do not behave as epileptic seizures behave. Unremarkable objective testing is consistent with psychogenic seizures, which are psychological in nature. The ALJ has failed to properly consider Maples' psychogenic seizure and to properly analyze them as a psychological condition. The ALJ also improperly dismissed Maples' subjective symptoms regarding her psychogenic seizures based solely on

---

[3] A. Krumholz, J. Hopp, *Psychogenic (nonepileptic) seizures,* SEMINARS IN NEUROLOGY, 26(3):341-50 (July 2006), www.ncbi.nlm.nih.gov/pubmed/16791780 (last visited Apr. 5, 2021).

objective testing, which is improper.

In addition, the ALJ erred by relying on the VE's testimony when the VE's job numbers were not supported by substantial evidence. At the hearing, the VE testified that Maples was capable of performing three jobs, and she offered an approximate number of such positions existing in the United States. [A.R. 1542]. The jobs identified were routing clerk, with approximately 54,000 jobs nationally; housekeeper/cleaner, with approximately 135,000 nationally; and retail marker, with approximately 300,000 nationally. [A.R. 1542]. The VE further testified that these jobs were simply representative of jobs Maples could perform, and it was not an exhaustive list of occupations. [A.R. 1542]. The attorney then questioned the VE regarding how she determined the job numbers. [A.R. 1543]. The VE stated that she used Job Browser Pro to reach her national numbers, but she could not identify how those numbers were correlated to specific SOC and DOT codes. [A.R. 1543-44]. Job Browser Pro is a commercial software program which provides job numbers for DOT codes and occupations. *See Dahl v. Saul*, No. 18-C-676, 2019 WL 4239829, at *4 (E.D. Wis. Sept. 6, 2019). The VE's only explanation of the job numbers was that it "is a mathematical weighting of the percentages," correlated to a DOT code and factored for full-time or part-time work. [A.R. 1544].

With more questioning from the attorney, the VE attempted to explain how the job numbers were achieved. She testified that the program starts with larger industry groupings (NAICS codes), which are divided into smaller groupings and codes. [A.R.

1545]. She stated that each code has a percentage, but that she doesn't know how to explain it, and that "it's all on the software." [A.R. 1545-46]. The VE also stated that she did not rely on her own experience in determining job numbers. [A.R. 1552]. Maples' attorney objected to the VE's job number estimates. [A.R. 1551]. The ALJ did not respond to this objection. [A.R. 1551].

The factual findings of the Commissioner, including findings as to "the kind and number of jobs available for someone with the applicant's disability and other characteristics," are "'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152, 203 L. Ed. 2d 504, (2019). Appellate courts have recently paid significant attention to issues involving the reliability of vocational experts' jobs evidence used in Social Security proceedings. In 2014, the Seventh Circuit expressed "concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings." *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015) (citing *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014)). In *Biestek*, the Supreme Court considered whether a VE's jobs testimony constituted "substantial evidence" for purposes of judicial review. Biestek's attorney cross-examined the VE, asking for the source of her jobs numbers data, which she declined to fully disclose. *Biestek*, 139 S.Ct. at 153. The Supreme Court held that a determination about whether a VE's testimony meets the substantial-evidence bar must be made case by case, using "markers of reliability" in the record to make the determinations. *Id.* at 1157. The Supreme Court explained that a VE's job-

number testimony will meet the substantial-evidence bar so long as it rests on a well-accepted methodology, and so long as the VE describes the methodology "cogently and thoroughly." *Biestek*, 139 S. Ct. at 1155.

Recently, the Seventh Circuit addressed a similar issue in *Brace v. Saul*, 970 F.3d 818 (7th Cir. 2020). In *Brace,* the Court found that the VE's jobs estimate was "critical to [the] appeal" because the Social Security Administration has the "burden of showing that a significant number of other jobs are available to the claimant." *Id.* at 820. The Seventh Circuit noted that VEs often rely on the DOT, which has not been updated in almost 30 years. *Id.* (citing *Occupational Information System Project*, SSA, www.ssa.gov/disabilityresearch/occupational_info_systems.html (last visited Apr. 6, 2021)). "Because the database of job titles is so outdated, an expert's methodology for connecting job titles to reliable estimates of the number of jobs for each title is especially important." *Id.*

In *Brace,* the VE stated that estimated job numbers are based on "weighting or re-weighting" allocations to get estimate of job numbers. *Brace*, 807 F.3d at 821. The Seventh Circuit found this answer to be "entirely unilluminating." *Id.* at 822. More specifically, the Seventh Circuit noted that words and phrases such as "allocation," "weighting," and "information that I have," without elaboration or explanation "cannot possibly satisfy the substantial-evidence standard." *Id.*

The Seventh Circuit has not yet opined on the reliability of the software Job Browser Pro. However, District Courts in the Seventh Circuit have affirmed VE

-11-

numbers that rely on Job Browser Pro estimates when the VEs were able to meaningfully describe the processes they employed. *See, e.g., Chad S. v. Saul*, No. 1:18-CV-298-WCL, 2020 U.S. Dist. LEXIS 26703, 2020 WL 773274, at *5-6 (N.D. Ind. Feb. 18, 2020); *Khuzaie v. Comm'r of Soc. Sec.*, No. 1:14-CV-00199-SLC, 2016 U.S. Dist. LEXIS 42958, 2016 WL 1253537, at *11-15 (N.D. Ind. Mar. 30, 2016). However, District Courts have remanded when the VEs were unable to explain their process. *See, e.g., Smith v. Berryhill*, No. 16 C 5451, 2018 U.S. Dist. LEXIS 167473, 2018 WL 4679584, at *7-8 (N.D. Ill. Sept. 28, 2018); *Russell v. Berryhill*, No. 16-cv-1251, 2017 U.S. Dist. LEXIS 138145, 2017 WL 3704354, at *4-6 (S.D. Ill. Aug. 28, 2017); *Westendorf v. Saul*, No. 19-cv-1019-JDP, 2020 U.S. Dist. LEXIS 136131, at *13-14 (W.D. Wis. July 21, 2020) ("Because the ALJ did not ensure that the VE's job estimates were the product of a reliable method, his decision was not based on substantial evidence.").

     Here, the VE was unable to cogently explain how the job numbers were achieved. She simply discusses vague weighted percentages and states that she does not know how to explain how the software achieves job numbers. This vague and hard to follow explanation does not meet the substantial evidence bar. *Brace*, 807 F.3d at 822 "Job Browser Pro might be a useful tool, but the VE needs to be able to explain how Job Browser Pro makes its job number estimates, how she used the software to generate her own estimates, and why she believes those estimates are reliable." *Westendorf*, 2020 WL 4381991, at *4. In other words, saying that "I don't know how to explain it, but it's all on the software"—as the VE said here—doesn't cut it. [A.R. 1545-46].

On remand, the ALJ should properly consider and analyze Maples' psychogenic seizures, as well as ensure that the VE provides testimony that reaches the substantial evidence bar. Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Maples. She can raise those issues directly with the ALJ on remand.

Maples requests that this decision be reversed and that she be awarded benefits. However, an outright reversal of the ALJ's decision is not appropriate, because an award of benefits "is appropriate only if all factual issues have been resolved," *Briscoe*, 425 F.3d at 355, and where "the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). However, the factual issues in this case have not been resolved. Therefore, the case is remanded for further analysis and to resolve the factual issues.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Sonya Maples' application for Social Security disability benefits is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED on April 7, 2021.**

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT